UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


UNITED STATES OF AMERICA )
                         )
            v.           ) NO. 03-CR-30044-MAP
                         )
GARRETT GORDON,          )
  Defendant              )


MEMORANDUM AND ORDER
RE: GOVERNMENT'S MOTIONS
FOR EXCLUDABLE DELAY
(Docket Nos. 42 & 46)

December 28, 2005

PONSOR, D.J.

## I. INTRODUCTION

Defendant was indicted on November 6, 2003 for being a felon in possession of a firearm, for possessing cocaine base with the intention of distributing it, and for possessing a firearm during and in relation to a drug trafficking offense. Because of his prior record, he faces a probable minimum mandatory twenty-year sentence if convicted.

As the chronology set forth below will demonstrate, this case has taken an unusually long time to reach trial. Before the court now are the two motions by the government to exclude relatively modest periods of time from the Speedy Trial

calculation, pursuant to 18 U.S.C. § 3161(h). Defendant, through recently appointed counsel, has opposed these motions. The government's lack of diligence in providing appropriate discovery, Defendant argues, may well be found, after hearing, to make allowance of the requested exclusions improper under 18 U.S.C. § 3161(h)(8)(C). Despite Defendant's opposition, the government's motions were allowed on December 19, 2005; this memorandum will set forth the court's reasoning.

## II. PROCEDURAL AND FACTUAL BACKGROUND

Following Defendant's indictment on November 6, 2003, this case was superintended by Magistrate Judge Kenneth P. Neiman through June 25, 2004, when Judge Neiman issued his Interim Scheduling Order and Final Status Report. The order established July 23, 2004 as the date for Defendant to file his Motion to Suppress, August 13, 2004 for the government's opposition, and September 9, 2004 for a final pretrial conference. Judge Neiman's order confirmed that, as of September 9, 2004, no time had run from the statutory seventy-day Speedy Trial clock.

Despite Magistrate Judge Neiman's order, defense counsel Jonathan R. Elliott, Sr. (predecessor to Defendant's current

2

counsel) neglected to file any motion to suppress and, instead, filed a Motion for Additional Time to file the suppression motion on September 9, 2004, the date of the pretrial conference. The papers suggest that the delay may have been related, in part, to Defendant's attempts to cooperate with the government.

On September 9, 2004, the court established a second schedule for filing a motion to suppress. Defense counsel was to submit the motion by October 8, 2004, opposition was to be filed by October 29, 2004, and a hearing was scheduled for December 13, 2004. An order issued excluding time from the Speedy Trial clock from September 9, 2004 to October 8, 2004 to permit counsel time to prepare the motion.

Once again, Attorney Elliott failed to file any motion to suppress in response to the court's order. Finally, on December 14, 2004, the suppression motion was filed and duly opposed on January 24, 2005. Recognizing that the time had been used by defense counsel to prepare the motion, the court issued an order excluding the period between October 8, 2004 and January 19, 2005 from the Speedy Trial calculation. Evidentiary hearings followed on the suppression motion on

3

February 16, March 11, and March 14, 2005.  At the conclusion of the hearings, the court denied the motion from the bench. The court then set a trial date of June 27, 2005.  A motion to exclude the time from March 14 to June 27, based on the interests of justice, was allowed on April 20, 2005 on the ground that counsel had needed time for negotiations regarding a possible plea, and, further, on the need to establish a reasonably convenient trial date that would permit continuity of counsel.  Thus, no days were deductible from the Speedy Trial clock from the date of Defendant's indictment up to the first date established for his trial on June 27, 2005.

Defendant's trial was thereafter continued to July 5, 2005 to accommodate a government witness who would be out of the area due to a medical emergency for his wife.  That period is hereby excluded pursuant to 18 U.S.C. § 3161(h)(3)(A).  On June 23, 2005 the trial was continued a second time to August 8.

Because of occasional references to cooperation by Defendant and a possible plea, and because of defense counsel's failure previously to comply with court orders for filing motions, the court requested the Magistrate Judge to

4

conduct a status conference on August 1, 2005 to confirm that the case would definitely be going to trial on August 8, 2005. This conference was held, counsel appeared, and the certainty of trial was confirmed.

On August 3, 2005, the government conveyed to defense counsel information regarding an inculpatory intercepted phone conversation between Defendant and one Raymond Shaver. The evidence regarding the conversation had been maintained in a file related to Shaver, who was also the subject of an investigation and of criminal charges both in federal and state courts, and was not discovered by government counsel in this case until shortly before trial. Although the government had not listed Raymond Shaver on the witness list submitted in preparation for the Gordon trial, government counsel apparently considered disclosure proper since the interception contained Defendant's voice.

Attorney Elliott, counsel for Gordon, has also represented Shaver on pending federal and state court criminal charges. On August 4, 2005, Attorney Elliott moved to withdraw his appearance, based upon the argument that Shaver's possible appearance in the Gordon trial would create a

conflict for him.[1]

When counsel gathered on August 8, 2005 to commence the scheduled trial, the court pronounced itself "a little puzzled about the exact basis for the motion to withdraw." (Dkt. No. 58, Tr. Hr'g 2.) The court pointed out that it did not appear that Shaver was even going to be a witness in the Gordon trial, and therefore the court did not "understand what the problem is here." (Id. at 3.)

In response to inquiries, counsel for the government indicated that, despite the absence of Shaver from its witness list, the government might consider calling him either in its case-in-chief, or as a rebuttal witness. If this should happen, the fact that counsel for Defendant had also represented Shaver would create a problem.

Nevertheless, the court continued to press counsel, since an obvious solution to the problem existed. The court could simply proceed to trial and bar the government from calling Shaver, based upon the failure to include him in its list of

---

[1]Defendant's current counsel also points to some other late-supplied discovery, but this discovery did not play any role in the filing of prior counsel's Motion to Withdraw and thus is irrelevant to consideration of the Speedy Trial issues now before the court.

witnesses and upon its failure to disclose the evidence of the conversation between Shaver and Defendant until shortly before trial.   In retrospect, this simple approach probably should have been followed by the court.

The court did not follow this approach because of the extremely harsh, practical consequences that would have resulted from proceeding to trial at that time -- upon both Defendant in this case, Garrett Gordon, and upon the potential witness, Raymond Shaver. An understanding of this consequence requires some background on two points.

First, prior to this trial date, Raymond Shaver, indicted in a separate proceeding and represented by Attorney Elliott, had pled guilty before me to charges that carried a mandatory minimum sentence of life imprisonment. Shaver's appearance in the Gordon trial, and a motion from the government confirming his substantial assistance, might have been the only way Shaver could avoid a lifetime in prison.   By barring the government from calling Shaver in this case, and proceeding to trial, the court would have eliminated that possibility.

Second, if convicted, Gordon himself faced a likely mandatory sentence of twenty years.   Again, plea negotiations

7

recognizing substantial assistance might result in a lower sentence. Indeed, counsel for the government stated that Gordon "is much closer to a plea, which we would accept at the eleventh hour if the court would accept. But the concern I have again is the finality of that plea if it were going to take place with what we've spoken about today with Mr. Shaver being a potential witness." (Id. at 15-16.) In other words, given the conflicts presented by Mr. Elliott's simultaneous representation of Shaver and Gordon, and Gordon's knowledge of that representation, any plea he might offer, even if it benefitted him, would be vulnerable to attack later on the ground that he felt pressured to plead due to his attorney's simultaneous representation of a potential witness against him.

Confronted with this confusing situation, the court (regrettably in retrospect) made the determination to allow the motion of Attorney Elliott to withdraw, with the result that the trial had to be continued to accommodate new counsel. The purpose of the court's ruling was to allow both Shaver and Gordon to negotiate, while represented by conflict-free counsel, with the government in an effort to perhaps palliate

8

the extraordinarily severe sentences they were facing.

On September 6, 2005, the government filed the first of the two motions now before the court, seeking to exclude the period of August 8 to September 9, 2005 from the Speedy Trial calculations, on the ground that the period was needed for appointment of new counsel. (See Dkt. No. 42.)  On September 9, counsel for the government filed the second motion, seeking an exclusion of the period from September 9 to October 27, 2005 on the ground that new counsel would need the time for trial preparation. (See Dkt. No. 46.)   18 U.S.C. §3161(8)(B)(iv) allows the court to permit an exclusion from the Speedy Trial calculation, on the ground that it serves the ends of justice, where a continuance is necessary to give a defendant "reasonable time to obtain counsel" and "reasonable time necessary for effective preparation."

The filing by the government of the motions on September 6 and 9, 2005 served to stop the Speedy Trial clock pending hearing on the motion followed by a thirty-day advisement period, once the court had received all materials necessary to render a decision.  See 18 U.S.C. §§ 3161(h)(1)(F) and (J).

As noted, new counsel for Defendant has opposed these two

9

motions and objected to any further exclusions from the Speedy
Trial clock, even those periods of time that might be
necessary for him to prepare for trial or plea in this case.
Defense counsel argues that Attorney Elliott's Motion to
Withdraw was precipitated by the government's late disclosure
of the evidence of the inculpatory conversation between Shaver
and Gordon to Elliott.  If the evidence relating to Shaver had
been disclosed in a timely fashion, the argument runs,
Attorney Elliott would have become aware of the conflict
earlier and either would have withdrawn his representation of
Shaver, or would have filed his motion to withdraw from this
case much sooner.

Defense counsel contends that, before the court rules on
the government's motions to exclude, it must permit defense
counsel to take discovery and hold an evidentiary hearing on
the degree of diligence exhibited by government counsel in
attempting to obtain the evidence of the Shaver/Gordon
conversation and provide it in a timely fashion to defense
counsel.   18 U.S.C. § 3161(h)(8)(C) forbids exclusions from
the Speedy Trial clock arising from continuances caused by
"lack of diligent preparation . . . on the part of the

10

attorney for the government."

In response to the defense opposition, the government contends that the record is sufficient, without discovery or any evidentiary proceeding, to permit the court to conclude that the government was diligent in discovering and providing the information regarding the Shaver/Gordon conversation prior to trial.

### III. DISCUSSION

Both the government and defense arguments land somewhat to the side of the point. The government's diligence, or lack thereof, in locating the evidence of the conversation between Shaver and Gordon is irrelevant. The court was prepared to deny Attorney Elliott's Motion to Withdraw and take the case to trial on August 8, 2005, barring the government from putting on any testimony from Raymond Shaver. Thus, the late disclosure of the discovery regarding Shaver would have had no impact on the trial whatsoever and would not have prejudiced Defendant in any way.

The decision to allow Attorney Elliott to withdraw, and the resulting expenditure of time while new counsel was appointed and prepared for trial, was the responsibility of

this court and was made in the interests of justice to protect
the rights of two defendants facing very long prison
sentences.   Each defendant, it appeared, was interested in
possibly cooperating, but both had been represented by the
same attorney.   Out of concern for both Gordon and Shaver, the
court took the responsibility to insure that they were both
adequately advised by independent and conflict-free counsel
before pressing Gordon to trial.   These circumstances
presented precisely a situation where failure to grant a
continuance might have resulted in a "miscarriage of justice"
-- i.e., a sentence for one or both of the defendants far
longer than might otherwise be sought by the government.
Avoiding such a miscarriage is recognized as a ground for
excluding time from the Speedy Trial calculation.   See 18
U.S.C. § 3161(h)(8)(B)(i).

Apart from the practicalities faced by the court on
August 8, 2005, exclusion is justified by the straightforward
circumstances underlying the government's current motions.
The period from August 8 to August 23, 2005 must be excluded
because Defendant simply had no attorney during that time.
Attorney Elliott had withdrawn and current counsel had not yet

filed his appearance. Moreover, the period from August 23 to September 6 must be excluded as time needed by counsel to prepare the case. Indeed, counsel frankly admits that, even as of the date of this memorandum, he will need more time to adequately prepare for trial. (See Dkt. No. 67, Emergency Mot. to Continue Jan. 3, 2006 Trial Date.)[2] The time from September 6, 2005 to the date of this memorandum has been excluded as necessary to receive memoranda, hear argument, and obtain transcripts necessary to rule on the government's September 6 and 9 motions. See 18 U.S.C. §§ 3161(h)(1)(F) and (J).

The only non-excluded dates from the Speedy Trial clock are the thirty days from July 5 until August 4, 2005, the date when Attorney Elliott's Motion to Withdraw was filed. Thus, forty days remained on the Speedy Trial clock as of the court's ruling on the government's motions on December 19, 2005.

Following the court's ruling on December 19, the clerk

---

[2]Defense counsel's arguments are ironic, but not flatly inconsistent. He contends that no new counsel would have been needed, and thus no extra time for preparation required, if the government had made timely disclosure of the discovery evidencing the conflict to Attorney Elliott.

13

was ordered to contact counsel and inform them that trial would commence on January 3, 2006, a date well within the period remaining under the Speedy Trial Act. In response, defense counsel filed his Emergency Motion to Continue, Docket No. 67, which was heard and allowed on December 23, 2005. The basis for the motion was, as noted above, counsel's understandable need for time to prepare. Trial is now set for February 6, 2006, a date still well within the Speedy Trial clock. To keep the record clear, however, the court has ordered the government to submit, with defendant's assent, a motion to exclude the time between December 23, 2005 and February 6, 2006, from the Speedy Trial calculation.

It is So Ordered.

_____
MICHAEL A. PONSOR
United States District Judge